UNITED STATES *v.* THE CROSSE & BLACKWELL Co. (No. 4822)[1]
THE CROSSE & BLACKWELL Co. *v.* UNITED STATES (No. 4824)

---

[1] C. A. D. 579.

United States Court of Customs and Patent Appeals, December 21, 1954

*Warren E. Burger*, Assistant Attorney General (*Richard E. FitzGibbon, Richard H. Welsh*, and *William J. Vitale*, special attorneys, of counsel), for the United States

*Allerton deC. Tompkins* for The Crosse & Blackwell Co.

[Oral argument October 13, 1954, by Mr. Welsh and Mr. Tompkins; reargued December 10, 1954, by Mr. FitzGibbon and Mr. Tompkins]

Before GARRETT, Chief Judge, and O'CONNELL, JOHNSON, WORLEY, and COLE, Associate Judges [original argument before O'CONNELL, Acting Chief Judge, and JOHNSON, WORLEY, and COLE, Associate Judges]

COLE, Judge, delivered the opinion of the court:

The Collector of Customs at the port of Baltimore, Maryland, classified an importation of canned beef stew from Canada as hash, or a form similar to hash, composed of vegetables and meat, not specially provided for, dutiable at 25 per cent ad valorem under paragraph 775 of the Tariff Act of 1930, as modified by the Annecy Protocol, T. D. 52373, and the President's proclamation, T. D. 52476.

The importer, protesting the collector's assessment, claimed alternatively that the merchandise should have been classified (1) as a soup preparation composed of vegetables and meat, not specially provided for, at 17½% ad valorem under paragraph 775 of said Act, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, or, by similitude, as authorized by paragraph 1559 of the Act [19 U. S. C. sec. 1001, par. 1559], as being similar to a soup preparation in material, quality, texture, or use; or (2) as a nonenumerated manufactured article, dutiable at 20 per cent ad valorem under paragraph 1558 of said Act [19 U. S. C. sec. 1001, par. 1558].

Trial of the issue thus raised was held before a single judge of the United States Customs Court on circuit, but upon completion of the evidentiary record the case was submitted to the Third Division of the Customs Court for decision. On the basis of the record before it, including the actual opening of cans and display of contents, the Third Division, pursuant to its decision, C. D. 1607, entered judgment sustaining importer's secondary claim that the involved merchandise was properly classifiable as a nonenumerated manufactured article under paragraph 1558, *supra*.

Cross-appeals have been taken here from that judgment. In supporting the correctness of the collector's classification, the United States maintains that the imported beef stew is a similar form to hash or other similar forms composed of vegetables and meat. It does not

contend that beef stew is hash *per se*. The importer's position on appeal is that its primary claim for classification of the merchandise directly as a soup preparation composed of vegetables and meat, or as similar thereto in either material, quality, texture, or use, as above set forth, should have been sustained.

Before proceeding with our discussion of the record on appeal, the following more detailed reading of the tariff provisions in controversy is deemed essential to a proper understanding of the issues involved.

Par. 775 (as modified by T. D. 52373 and T. D. 52476). Pastes, balls, puddings, hash (except corned-beef hash), and all similar forms, composed of vegetables, or of vegetables and meat or fish, or both, not specially provided for, 25% *ad val.*

Par. 775 (as modified by T. D. 51802). * * * soups, soup rolls, soup tablets or cubes, and other soup preparations, composed of vegetables, or of vegetables and meat or fish or both, not specially provided for, 17½% *ad val.*

Par. 1558 (Tariff Act of 1930). That there shall be levied, collected, and paid on * * * all articles manufactured, in whole or in part, not specially provided for, a duty of 20 per centum *ad valorem.*

Par. 1559 (Tariff Act of 1930). That each and every imported article, not enumerated in this Act, which is similar, either in material, quality, texture, or the use to which it may be applied to any article enumerated in this Act as chargeable with duty, shall be subject to the same rate of duty which is levied on the enumerated article which it most resembles in any of the particulars before mentioned; * * *.

The record discloses that the ingredients used in preparing the stew in question are 25% beef, 20% potatoes, 5% carrots, 5% peas, 5% onions, 2½% tomato puree, 5% celery, flour, beef extract, flavoring, and spices, and 32½% water. At the trial, importer's witness, Barry, a chemist, testified that he supervised the production of the imported merchandise. Describing that process of production, Mr. Barry stated that water is first put in a large kettle, and frozen vegetables, diced potatoes, flour, tomato puree and spices thereafter added. This solution is brought to a boil and simmered, and, when cooked, is pumped into an Ayres soup filler. The meat, which has previously been diced, boiled and cooked apart from the foregoing solution, is placed in the individual cans to be filled, and, thereafter, the solution in the Ayres soup filler is added. The substance thus combined goes to a Horex filler where boiling water is added. The can is then sealed and put through a cooking process of 2 hours at 240° Fahrenheit.

We have opened a can of the imported stew (Importer's Exhibit 1) as suggested and consented to by counsel for both parties and find that the meat, vegetables, and sauce are contained together in a thickened mass and the sauce has penetrated into both meat and vegetables. We also note that an analysis of the merchandise by the Customs laboratory (Exhibit A of the United States) indicates that, in its condition as imported, the instant stew contains 15% meat, 45% vegetables, and 40% liquid.

The directions on the label of each can calls for the consumer, prior to serving, to place the contents in an open pan and stir while heating. No water is added.

Importer introduced four cans of Campbell's condensed beef soup into evidence at the trial (Importer's Exhibit 2) and, with respect thereto, witness Barry stated that, while he had not seen Campbell's condensed beef soup prepared, he believed such soup, on the basis of visual observation, to be similar to the instant stew. The witness testified, however, that the importer does not make concentrated soups but instead markets soups that are fully prepared ready to use as they come out of the can, and he further stated that while he supervised the production of soups for the importer, he did not produce soups such as vegetable soup or beef soup. He was of the opinion that condensed vegetable beef soup and beef stew are composed of the same materials and are generally produced in the same way, and when a can of condensed soup is diluted with the necessary amount of water (usually one can) it is similar in thickness to the instant stew. In stating his views as to the similarity between soup and stew, the witness said:

If you take vegetable beef soup and beef stew, they are composed of essentially the same ingredients, as is easily shown by the common method of manufacturing. They both have meat in, they both have potatoes, they both have vegetables. They usually have, both have tomato products in them, and they are spiced. So that if you are thinking of them on a composition basis, they are almost identical.

Another witness for the importer stated that he had been preparing soups and stews for the importer for 10 years, and that the processes used in producing these products were the same. More specifically, the witness, testifying to the manner of producing vegetable soup, stated that beef stock, tomato paste, spice and meat extract are placed in a kettle to which is thereafter added raw vegetables (sometimes diced), a thickening agent such as flour, frozen vegetables and diced beef. Water is added and the mixture cooked. In a 1,000 pound batch of vegetable soup the witness stated he would use 600 pounds of vegetables and vegetable substances, 150 pounds of meat, and 250 pounds of water. From his long experience in preparing soups and stews the witness observed, by way of comparison between the condensed soup of importer's Exhibit 2 and a can of the instant stew, that the ingredients present in each were the same, but that the pieces of meat and vegetables in the stew were larger than those in the soup. He further stated that there was no barley in the stew and that the stew was more liquid than the soup.

It was the opinion of the two witnesses testifying on behalf of the importer that a stew could be regarded as a kind of a soup and that, if thinned, stew could be served as a soup.

Importer's Exhibits 4 and 5 are, respectively, cans of Libby's corned beef hash and importer's corned beef hash. The witnesses testifying for the importer described the process of preparing corned beef hash. Collectively, their testimony was to the effect that corned beef hash is prepared differently than beef stew and vegetable soup, the hash being prepared as follows: Beef is cooked in a kettle of water and sodium nitrate for a half hour, and thereafter the meat is removed from the water and chopped. Potatoes, which have been subjected to a four minute steaming, are then diced and chopped. The chopped meat and potatoes are then put into a "Buffalo mixer," spices and onions being added, and then mixed into a thick paste of meat and potatoes. The mixture is then filled into cans which are thereafter sealed and subjected to a further cooking process. No water is added to the mixed ingredients prior to canning and there is no boiling or "stewing" operation with regard to the various ingredients used in the hash. One witness characterized hash as being a meat and potato product with some spicing in it, and another stated that corned beef hash was mostly meat and potatoes flavored with a little bit of onion and spices.

The record further indicates that beef stew and condensed soup are generally prepared for consumption by heating the contents of the can in an open pan (water being added to the soup), while hash is generally heated in a well greased frying pan. From knowledge and experience, we can easily agree with this.

Considering first the importer's claim that the instant stew is a soup preparation under paragraph 775, as modified, *supra*, or similar thereto in either material, texture, use, or quality, under paragraph 1559, *supra*, it is our opinion that beef stew is not directly a soup preparation nor is it ordinarily intended to be used as such. During oral argument of the appeals before this court, counsel for the importer stated, in response to questions from the bench, that commercially beef stew is not a soup preparation nor could it, because of the greater expense involved in manufacturing beef stew, be sold as a soup preparation. Further, as aptly stated by the court below, "The only evidence that beef stew actually was used in that manner [as a soup preparation] is Mr. Charles's statement [importer's witness] that he had seen cooks in hotels or restaurants make soup out of stew. There is also testimony that leftover meat or vegetables might be added to soup and the mixture baked or stewed, but there is nothing in the record to indicate that is a common usage. Beef stew is ordinarily prepared without the addition of water and is served as an entree. Condensed soup is prepared by adding water and is served prior to the main meal." We are further of the opinion that the instant stew is not similar to a soup preparation, such as the condensed beef soup of

importer's Exhibit 2, in either material, quality, texture or use, and, in this respect, we quote from the opinion of the court below as follows:

* * * Most of the ingredients [in soup preparations such as importer's Exhibit 2 and the instant stew] are the same, but the amounts and the condition thereof in the finished products are not similar. The items in The Crosse & Blackwell Company beef stew, prior to cooking, consisted of beef, 25 percent, vegetables and vegetable substances, 42½ percent, and water, 32½ percent. The items in The Crosse & Blackwell beef [vegetable] soup consisted of beef stock, 15 percent, vegetables and vegetable substances, 60 percent, and water, 25 percent. The pieces of meat and vegetables in the stew are considerably larger than those in the soup. Where articles are identical as to material, but in a different condition, such identity does not constitute a similarity within the sense of the similitude provision. *Isler & Guye* v. *United States*, 11 Ct. Cust. Appls., 340, T. D. 39146; *United States* v. *Charles R. Allen, Inc.*, 37 C. C. P. A. (Customs) 110, C. A. D. 428.

The products are not similar in texture, since the stew contains more meat and larger pieces of both meat and vegetables. It also contains more liquid than the condensed soup. They are not similar in quality. The evidence establishes that the stew contains more meat and it is, therefore, more expense, that is, of better quality than the soup. While there may be fugitive or incidental uses of the stew as soup and of the soup as a part of a stew, stew is ordinarily used as the main course of a meal, whereas soup is used as a first course. There must be substantial sameness in the method and result of use of the two products in order to establish similitude of use. *United States* v. *B. R. Anderson & Co. and Geo. S. Bush & Co.*, 17 C. C. P. A. (Customs) 393, T. D. 43833; *Corporacion Argentina de Productores de Carnes* v. *United States*, 29 C. C. P. A. (Customs) 288, C. A. D. 204; *Mary G. Ricks* v. *United States*, 33 C. C. P. A. (Customs) 1, C. A. D. 308.

Nor do we believe that the instant beef stew is classifiable as a form similar to hash composed of vegetables and meat under paragraph 775, as modified, *supra*, as claimed by the Government. In the sense in which used in said paragraph 775, *supra*, we think it is manifest that the provision for "similar forms * * * composed of * * * vegetables and meat * * *" means substantial similarity in direct relation to the articles specifically enumerated in that paragraph, i. e., similar in form to pastes, balls, puddings, or hash. In this respect, the lower court, commenting upon the nature of the enumerated articles, properly observed that each such article is a coherent mass which consists of ingredients which have been chopped up and mixed together so that they cannot readily be separated, but that stew is not such a mass and the ingredients therein can be separated and identified. Considering other differences, the lower court noted that the pieces of meat and vegetables in the stew at bar are larger than those in the hash, and more vegetables are contained in the stew than are present in the hash; that hash is generally in a dry condition while stew contains a liquid; and that the two products are prepared and served differently, the stew being a complete meal while the hash, generally served with a salad or another vegetable, is not.

In its appeal, the Government has relied largely upon this court's

decision in *Pacific Trading Co.* v. *United States*, 22 C. C. P. A. (Customs) 88, T. D. 47078, wherein the merchandise under consideration consisted of meat and bamboo sprouts and a small quantity of a thin juice or gravy. It had been classified under paragraph 773 of the Tariff Act of 1922 as hash or a similar form composed of meat and vegetables, but claimed dutiable as a nonenumerated article under paragraph 1459 of that Act. One witness testified as to the common meaning of the term "hash." No other testimony was introduced. On the basis of that record, we held that while the pieces of meat and vegetable in the imported merchandise were larger than those usually contained in hash, and the imported merchandise contained somewhat more moisture than is found in hash, the collector's classification as a form similar to hash was correct.

Unlike the record in the *Pacific Trading* case, *supra,* the record now before us presents, as heretofore noted, numerous and substantial differences between hash and stew. These differences are not confined solely to the sizes of the pieces of meat and vegetables in the respective products, but are such as we deem sufficient to negative similarity as claimed by the Government.

To disturb the ruling of the lower court which found the merchandise involved to be an article "manufactured, in whole or in part, not specially provided for," and agree with either contention here made, we would be required to rule that (1) stew is hash or similar thereto, or (2) that stew is a soup preparation or similar thereto in either quality, material, texture, or use. Why such a constrained contention by each of the parties should grow out of this record we have not been able to appreciate. We are dealing with a commodity well known to most everybody. It is today just as prominent in menu parlance as soup preparations or hash. It should continue to be, and, in tariff findings, as much entitled to individuality in name as are soup preparations and hash.

For the reasons hereinbefore stated, the judgment of the United States Customs Court ordering, adjudging, and decreeing that the protest in this case be sustained, and the merchandise, canned beef stew, be held dutiable at 20 per centum ad valorem under paragraph 1558 of the Tariff Act of 1930 as a nonenumerated manufactured article, is *affirmed.*[1]

JOHNSON and WORLEY, J. J., dissenting:

In our opinion, the imported stew is similar to hash or "similar forms," composed of vegetables and meat, as classified by the collector under the provisions of paragraph 775, as modified, *supra.*

---

[1] The initial argument in this case was heard on October 13, 1954, and a reargument at the suggestion of the court, prior to its decision herein, was held on December 10, 1954 at which time no additional briefs were filed.